Sadler's Estate.

318

*Albert A. J. Cohan*, for exceptions; *David Wallerstein*, contra.

PER CURIAM, Sept. 19, 1930.—The court being evenly divided, these exceptions are dismissed, and the adjudication is confirmed absolutely.

LAMORELLE, P. J., dissenting.—I am of opinion that the learned Auditing Judge erred in rejecting the application of Anna Sadler to function as co-trustee and in awarding the principal of the estate to Charles Sadler as sole trustee.

This ruling, which is at variance with the original ruling, is based solely upon the learned Auditing Judge's interpretation of a paper which at a later hearing was offered in evidence.

The original ruling was correct; the later one is not.

No testimony was offered to show under what circumstances the paper was signed. We must, therefore, rest on this paper alone. I quote:

"Philadelphia, January 6th, 1927

"To William J. Campbell, Register of Wills, Philadelphia

"I, Anna Sadler widow of Rufus E. Sadler and one of the executors named in his will and testament, do hereby renounce my right to Letters Testamentary upon the said estate and request you to grant same to Charles A. Sadler as the sole executor and trustee.

"Witness my hand and seal the day and date above written,

"Witness                                        ANNA SADLER  [Seal]
    "W. C. COULEY."

What was the purpose of this writing? It is a well known fact that the Register of Wills will not grant letters testamentary to one executor when

more than one are named, unless those others renounce their right to act. That is all that the widow did; she renounced her right to letters testamentary and no more. The rest of the paper is surplusage. The Register neither appoints trustees nor discharges them. He is concerned alone with the grant of letters of administration or testamentary; his ruling on these subjects is within his original jurisdiction, and, personally, I doubt very much whether a renunciation of the right to act as trustee filed with the Register of Wills would have any binding effect or even act as an estoppel. The request to the Register "to grant the same," i. e., letters of administration, to Charles A. Sadler as the sole executor and trustee had no legal force or effect, because when Anna Sadler, the widow, renounced her right to letters testamentary, the Register was bound to issue them to the remaining named executor, and be it here noted the request is not to grant letters testamentary to Charles A. Sadler as sole executor and sole trustee at all, and as I understand the ruling of the learned Auditing Judge and the opinion of this court, it is that this word "trustee" must mean something, and that something is that the "devoted wife" (words used by testator) is to be ousted because in a paper not addressed to this court, but to some one else and for an entirely different purpose, a word which at best is ambiguous, is to be interpreted as a renunciation of her trusteeship, when in that very same paper she confines herself to a renunciation of her rights as executor; for that was the only question before the Register of Wills.

What might be the effect of this paper if the estate was left to the executors in trust is not for our consideration, because the appointments were separate and distinct. Again I quote, this time from the will: "All that I have I leave to my Trustees (hereinafter named) in trust for the following purposes to wit: To turn over the net proceeds in quarterly dividends (oftener if possible) of the estate to my wife, Anna. . . . At the death of my devoted wife, all is to go to my nephew, Rufus Noel Sadler, son of Francis W. Sadler. My executors and Trustees are to be my wife, Anna, and brother, Charles A. Sadler."

As I understand the law, a renunciation may be recalled at any time and a named trustee may insist on his right to act. This is everyday practice in our courts, and I have grave doubt that when the only objection comes from the acting trustee he should be heard at all. Testator surely had some object in view when he, after giving his wife all of the income, appointed her a co-trustee; she was more interested in the income than was any one else, and the fact that the co-trustee objects to her coöperation is the very reason, in my judgment, why she should be allowed to withdraw her renunciation, if renunciation it is, which I, of course, do not for a moment concede.

In Devlin's Estate, 19 Dist. R. 431, a trustee filed an accounting in order that he might withdraw, and an award was made to a substituted trustee; afterwards, when an application was made for appointment of a substituted trustee, the former trustee filed an answer saying that he had changed his mind. Said Judge Penrose in dismissing the petition: "It is true that he filed an account with the intention, as he then asserted, of asking for his discharge; but he subsequently changed his mind—as he had a right to do—and now declares that he will continue to act. There is no allegation that he has been guilty of misconduct or that he is in any way incapaciated. Petition dismissed."

Can it be doubted that an account duly sworn to, a petition addressed to an Auditing Judge, also duly sworn to, should be as effective as is Anna Sadler's renunciation, not of her right to act as trustee but waiving her letters

320

testamentary only? I for one do not doubt. As the widow did not withdraw as trustee at all, and as the Register of Wills had no authority to pass on the question, why distort the paper she signed by attributing to it a meaningless meaning—meaningless because it has no relation to the purpose of the paper, which was to allow the Register of Wills to ignore her in granting letters testamentary.

I would sustain the exceptions.

STEARNE and SINKLER, JJ., concur in this dissent.